IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ARON J. AUSTIN                                                                                         PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:15-CV-177-SA-SAA

JILL CARWYLE, et al.                                                                              DEFENDANTS

MEMORANDUM OPINION

Plaintiff filed his Complaint [1] in this Court on October 14, 2015 against the Lafayette County Justice Court Clerk Jill Carwyle, Deputy Clerks May Ann Pettis, Carolyn Bell, and Sheritta Harris, in their individual and official capacities, Lafayette County, Mississippi, (collectively: County Defendants) and the City of Oxford, Mississippi. The City of Oxford was dismissed by another order of this Court, leaving only the County Defendants remaining. Now before the Court is the County Defendants' Motion to dismiss for failure to state a claim, and for qualified immunity [14]. The Plaintiff responded [17], and the Defendants did not reply within the time allotted, making this motion ripe for review. *See* L.U.CIV.R. 7(b)(4).

On July 24, 2015, Plaintiff received a speeding ticket in Lafayette County. In an attempt to pay the fine associated with his speeding ticket, the Plaintiff mailed a personal check to the Lafayette County Justice Court. The Justice Court responded, informing the Plaintiff that it does not accept personal checks from out of state defendants. Plaintiff is a resident of Tennessee. Plaintiff then directed his bank to issue a check to the Justice Court for $100.00. The Justice Court again refused Plaintiff's payment and informed him that it does not accept partial payments. The Justice Court then mailed Plaintiff a notice dated September 16, 2015 stating that his driving license and privileges would be suspended if he did not pay the full amount due ($196.00), within ten days.

In his complaint, the Plaintiff alleges constitutional and civil rights violations and demands injunctive and monetary relief. Specifically, the Plaintiff alleges that the Defendants discriminated against him because he is from Tennessee, he is African-American, and because he is disabled. According to the Plaintiff, he suffers from Darlin disease, and cannot be exposed to sunlight or florescent lights. The Plaintiff further alleges that the Defendants subjected him to deprivation of rights and privileges secured by the constitution under color of state law by refusing his personal check and partial payment, and engaged in extortion against him.

The Plaintiff seeks injunctive relief in the form of an apology from the Justice Court, various reformations of Justice Court policies, and the termination of the named Justice Court Clerks. Plaintiff also seeks $2,404,800,000.00 in damages.

The questions before the Court at this time are whether the Plaintiff has articulated a plausible claim for relief against the County Defendants, and if so, whether the individual defendants may invoke the protection of qualified immunity.

*Standard of Review*

Bearing in mind the *pro se* status of the Plaintiff, and that the complaint should be construed liberally in his favor, the Court will apply the following standard in assessing the plausibility of the Plaintiff's stated claims against the City. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed to be true and are viewed in the light most favorable to the plaintiff." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's

likelihood of success." *Id*. (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Sullivan v. Leor Energy LLC*, 600 F.3d 542, 546 (5th Cir. 2010). "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' FED. R. CIV. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014).

While a plaintiff's complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Whether a plaintiff has stated a plausible claim for relief is "context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663, 129 S. Ct. 1937.

*Discussion and Analysis*

With the above standard in mind, the Court must catalog the particular claims brought by the *pro se* Plaintiff as a preliminary matter. Based on a review of the pleadings, the Court finds that the Plaintiff has brought three constitutional claims under Section 1983, and one state law claim. Pursuant to the Fourteenth Amendment, the Plaintiff brings two claims under the Equal Protection Clause, one for discrimination based on race, one for discrimination based on

disability, and a claim under the Privileges and Immunities Clause for discrimination based on his state citizenship. Finally, the Plaintiff brings a state law claim for extortion.

*Equal Protection Claims*

*Race Discrimination*

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "Classifications based on race carry a danger of stigmatic harm . . . [and] may in fact promote notions of racial inferiority and lead to a politics of racial hostility." *Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006) (citing *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493, 109 S. Ct. 706, 102 L. Ed. 2d 854 (1989)). "[A]ll race-conscious measures receive strict scrutiny review under the Equal Protection Clause." *Id.*

On the most fundamental level, Plaintiff must allege some treatment that is *unequal* to provide a basis for his claim of race discrimination. "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff 'must allege and prove that [he] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent.'" *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (citing *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001)); *see also Village of Arlington Hts. v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977) (holding that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

In this case, the Plaintiff has failed to allege any facts to support his bare allegation that the County Defendants discriminated against him based on his race. While a plaintiff's complaint

4

"does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Johnson*, 135 S. Ct. at 346, 190 L. Ed. 2d 309 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955) (emphasis added). In light of this complete lack of factual support, the Court finds that the Plaintiff has failed to state a plausible claim for relief against the County Defendants for discrimination based on race.

*Disability Discrimination*

Unlike race, disability is not a suspect classification under the Equal Protection Clause, and discriminatory disability policies are subject only to a rational-basis review. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 442, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). In order to survive a 12(b)(6) motion to dismiss, a Plaintiff must meet a similar burden of alleging a specific factual basis for unequal treatment.[1] It is well established that in order to state an equal protection claim a plaintiff must "allege, *inter alia*, that similarly situated individuals were treated differently" and "purposeful or intentional discrimination." *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir. 1998) (citing *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir. 1992); *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 95 L. Ed. 2d 262 (1987)).

In the instant case, Plaintiff has not alleged any facts that could demonstrate that the County Defendants treated him differently than any other person or group because of his disability. *See Johnson*, 135 S. Ct. at 346, 190 L. Ed. 2d 309; *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. Because of this complete lack of relevant factual allegations, the Plaintiff has not

---

[1] Plaintiff has not specifically invoked protection of the Americans with Disabilities Act. Even if he had specifically referenced the ADA in his complaint, under the 12(b)(6) standard articulated above, the Plaintiff is required to articulate specific facts to support a claim of discrimination based on disability regardless of the specific legal theory under which he seeks relief.

alleged a plausible claim for relief against the County Defendants for discrimination based on his disability.

*Privileges and Immunities Claim*

Plaintiff also alleges that the County Defendants discriminated against him because he is not a Mississippi resident by refusing to accept his personal check and for refusing to accept partial payment of his fine.

Mississippi law grants justice court clerks the discretion to accept personal checks as payment for fines or costs. *See* MISS. CODE. ANN. § 9-11-27(1). A separate state law requires justice court clerks to accept personal checks from Mississippi residents. *See* MISS. CODE. ANN. § 63-9-12. As such, there is no state law expressly prohibiting clerks from accepting personal checks from out of state defendants. The Plaintiff in this case falls in between the requirement that clerks accept personal checks from Mississippi residents, and the discretion clerks have to accept personal checks in general.

Application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two-step inquiry. *United Bldg. & Const. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 218, 104 S. Ct. 1020, 1029, 79 L. Ed. 2d 249 (1984); *Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 383, 98 S. Ct. 1852, 1860, 56 L. Ed. 2d 354 (1978). The first question is whether the ordinance burdens one of the privileges and immunities protected by the clause. *Id*. If so, the second question is whether there is a substantial reason for the difference in treatment. *Id* at 222. At this early stage of the proceedings, the only question the Court must answer is whether the Plaintiff has stated a plausible claim for relief; specifically whether the Plaintiff has

sufficiently alleged that, the Justice Court policy burdens one of the privileges and immunities protected by the Clause.

Not all policies that draw a distinction between residents and non-residents conflict with the Privileges and Immunities Clause.

> "Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single Union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally."

*United Bldg. & Const. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of City of Camden*, 465 U.S. 208, 222, 104 S. Ct. 1020, 1029, 79 L. Ed. 2d 249 (1984) (citing *Baldwin v. Montana Fish and Game Comm'n*, 436 U.S. 371, 383, 98 S. Ct. 1852, 1860, 56 L. Ed. 2d 354 (1978)).

To that end, the Supreme Court has rejected state policies that affect "fundamental" rights or activities, and discriminate against out-of-staters with regard to constitutional rights or with regard to earning a living. *Compare Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 108 S. Ct. 2260, 101 L. Ed. 2d. 56 (1988) (declaring unconstitutional a state's residency requirement for admission to the state bar by motion), and *Doe v. Bolton*, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973) (holding that a state cannot discriminate against out-of-staters with regard to access to medical care even though there is no constitutional right to medical care), with *Baldwin*, 436 U.S. 371, 98 S. Ct. 1852 (rejecting challenge to policy requiring out-of-staters to pay significantly higher fees for elk hunting).

The Supreme Court has stated that "the Privileges and Immunities Clause protects the right of citizens to ply their trade, practice their occupation, or pursue a common calling."

*McBurney v. Young*, 133 S. Ct. 1709, 1715, 185 L. Ed. 2d 758 (2013) (citing *Hicklin v. Orbeck*, 437 U.S. 518, 524, 98 S. Ct. 2482, 57 L. Ed. 2d 397 (1978); *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 280, 105 S. Ct. 1272, 84 L. Ed. 2d 205 (1985) ("'[O]ne of the privileges which the Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State'"). Even when a law burdens the ability to engage in a "common calling", the Court has only struck laws down as violating the privilege "when those laws were enacted for the protectionist purpose of burdening out-of-state citizens." *Id*.[2]

In the instant case, the Plaintiff's claim is not that he was prevented from obtaining a benefit or that one was taken from him, nor has he alleged, or brought forth any facts, that could support a finding that the Justice Court policies were enacted for any protectionist purpose. *See id*. Nowhere in the Plaintiff's complaint does he allege that his driver's license was actually revoked, only that revocation was threatened. The Plaintiff's claim is based on the allegation that the Justice Court policy of refusing to accept personal checks from out-of-state defendants is discriminatory. The Plaintiff's chief complaint is that the payment methods available to in-state defendants should also be available to out-of-state defendants.[3]

Although the precise parameters of what privileges and immunities are protected by the Clause are not rigidly defined, the Supreme Court cases applying the protection of the Clause have mostly involved a constitutional right, or an economic concern. *See id*. The Plaintiff in this case has not alleged any constitutional infringement, a negative impact on his ability to earn a

---

[2] In *McBurney*, the Supreme Court upheld a Virginia Law that provided access to public records only to citizens of the Commonwealth. The unanimous opinion held that because the law did not prevent anyone from earning a living in Virginia, and it did not discriminate with regard to a fundamental right, it did not violate the Privileges and Immunities Clause. *See McBurney*, 133 S. Ct. at 1715, 185 L. Ed. 2d 758.

[3] The Plaintiff also seeks to challenge the Justice Court policy of not accepting partial payments. The Court finds there is no basis for challenging this policy as discriminatory because Plaintiff has not alleged, factually or otherwise, that the policy is applied unequally.

living, or any economic concern. *Id*. Notably, the Plaintiff does not allege that he was required to pay a higher fee than in-state defendants, he only challenges the method of payment, thus reflecting no economic concern.[4]

Because the Plaintiff has failed to allege a recognizable infringement of a right protected by the Privileges and Immunities Clause, the Court finds that the Plaintiff has failed to sufficiently plead a factual or legal basis for a claim.

*Qualified Immunity*

Because the Plaintiff failed to sufficiently allege a claim for discrimination based on any grounds, the Court need not address the individual County Defendants' motion for qualified immunity. However, the Court notes that, once asserted, a plaintiff carries the burden of establishing the violation of a constitutional right as a requirement for defeating qualified immunity. *See Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).[5] As outlined above, in this case the Plaintiff has not established the violation of a constitutional right.

*State Law Claim*

Finally, in his complaint, the Plaintiff alleges that the County Defendants engaged in extortion against him. The Mississippi Tort Claims Act (MTCA) is the exclusive civil remedy for a party injured by the acts or omissions of a Mississippi governmental entity or employee.[6]

---

[4] The Plaintiff does not allege the infringement of any fundamental right, property interest, or other concern that could be construed as a privilege or immunity as contemplated under current Supreme Court jurisprudence.
[5] The burden of demonstrating that the defendant official is not entitled to qualified immunity falls to the plaintiff. *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013). Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vincent*, 805 F.3d at 547 (quoting *Harlow*, 457 U.S.at 818, 102 S. Ct. 2727). This demands a two-step analysis: whether a constitutional right was violated and whether the allegedly violated right was "clearly established." *Id*. (quoting *McClendon v. City of Columbia,* 305 F.3d 314, 322–23 (5th Cir. 2002)). The court has discretion to perform either prong first. *Id*.
[6] Relevant to the above analyses of the Plaintiff's constitutional claims, the Court notes that Mississippi Tort Claims Act does not apply to a Section 1983 claim. *McGehee v. DePoyster,* 708 So.2d 77, 80 (Miss. 1998) (citing *Felder v.*

*Booneville Collision Repair, Inc. v. City of Booneville*, 152 So. 3d 265, 273 (Miss. 2014); *Watkins ex rel. Watkins v. Mississippi Dep't of Human Servs.*, 132 So. 3d 1037, 1042 (Miss. 2014). Although the Plaintiff does not specifically refer to the MTCA in his complaint, to the extent he alleges that the County Defendants engaged in extortion, or any intentional tort, such claims must be brought under the MTCA. *Id*. A prerequisite to filing suit under the MTCA is the filing of notice of the claims with the governmental entity to be sued. *See* MISS. CODE. ANN. § 11-46-11. The Plaintiff does not allege that he has noticed his claims to the County Defendants, and although the County Defendants raised the notice argument in their motion to dismiss, the Plaintiff does not address this issue in his response.

Because the Plaintiff failed to provide notice of his state law tort claims to the County Defendants, he has not complied with the mandatory prerequisites of the MTCA, and his state law tort claims must be dismissed.

For the reasons fully articulated above, the County Defendants' Motion to Dismiss [14] is GRANTED as to all Plaintiff's claims.

Plaintiff's state law claims are DISMISSED without prejudice.

Plaintiff shall have 14 days from the issuance of this Opinion to move for leave to amend his complaint to cure the pleading deficiencies relative to his constitutional claims outlined above. If the Plaintiff fails to respond in the time allowed, or fails to adequately amend his complaint, his remaining claims against the County Defendants may be dismissed pursuant to Federal Rules of Civil Procedure 12 and 41.

**SO ORDERED this the 19th day of April, 2016.**

                                                    **___/s/_ Sharion Aycock_____**
                                                  **UNITED STATES DISTRICT JUDGE**

---

*Casey*, 487 U.S. 131, 140–41, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988) (holding that state notice of claim requirements are not applicable to Section 1983 actions).